# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

ALFRED RICCO,

    Plaintiff,

  v.

WALMART, JOHN DOES 1-3, and
JOHN DOES 4-6,

    Defendants.

WALMART,

   Third Party
Plaintiff,

   v.

AUDUBON VENTURES, LLC,

   Third Party
Defendant.

Civil No. 12-1087 (NLH/KMW)

**OPINION**

---

**APPEARANCES:**
Marc A. Weinberg, Esquire
Saffern & Weinberg
815 Greenwood Ave.
Suite 22
Jenkintown, Pennsylvania 19046
 *Attorney for Plaintiff Alfred Ricco*

Carmen Marie Finegan, Esquire
Marni Sabrina Berger, Esquire
Roberto K. Paglione, Esquire
McDonnell & Associates PC
500 Route 70 West
Cherry Hill, New Jersey 08002
 *Attorneys for Defendant/Third-Party Plaintiff Wal-Mart*
 *Stores East, LP, improperly pled as Wal-Mart*

Joseph A. Venuti, Esquire
Swartz Campbell, LLC
1300 Route 73
Bloom Court - Suite 101
Mt. Laurel, New Jersey 08054
     *Attorney for Third-Party Defendant Audubon Ventures, LLC*


**HILLMAN, District Judge**

        This matter comes before the Court by way of Defendant Wal-
Mart Stores East, LP's motion [Doc. No. 28] seeking summary
judgment pursuant to Federal Rule of Civil Procedure 56 on all
of Plaintiff's claims.  Also before the Court are two motions
[Doc. Nos. 29, 35] by Third-Party Defendant Audubon Ventures,
LLC to strike the third party complaints [Doc. Nos. 22, 31]
filed by Defendant and Third-Party Plaintiff Wal-Mart Stores
East, LP.  The Court has considered the parties' submissions and
decides this matter pursuant to Federal Rule of Civil Procedure
78.

        For the reasons expressed below, Defendant Wal-Mart Stores
East, LP's motion for summary judgment will be granted and
Defendant Audubon Ventures, LLC's motions to strike the third-
party complaints will be denied as moot.


**I.    JURISDICTION**

        The Court exercises jurisdiction over this matter pursuant
to 28 U.S.C. § 1332 based on diversity of citizenship between
the parties and an amount in controversy in excess of $75,000.

Plaintiff Alfred Ricco is a New Jersey citizen residing in Camden County, New Jersey.  (<u>See</u> Def.'s Resp. to Ct.'s Order to Show Cause [Doc. No. 8] ¶ 5.)  Defendant Wal-Mart Stores East, LP (hereinafter, "Wal-Mart") is a limited partnership and a citizen of both Delaware and Arkansas.  (<u>Id.</u> ¶ 7.)  Specifically, Wal-Mart's sole general partner is Wal-Mart Stores East Management, LLC, and Wal-Mart's sole limited partner is Wal-Mart Stores East Investment, LLC.  (<u>Id.</u>)  The sole member of both Wal-Mart's limited and general partners is Wal-Mart Stores East, Inc., which is a Delaware corporation with its principle place of business in Arkansas.  (<u>Id.</u> ¶¶ 8-10.)  Accordingly, complete diversity of citizenship exists between the parties in this action.[1]  As Plaintiff failed to respond to Wal-Mart's request to limit damages to less than $75,000, it appears that the amount in controversy is in excess of $75,000, exclusive of interest and costs.

---

[1] In assessing whether complete diversity of citizenship exists between the parties, the Court need not consider the citizenship of Third-Party Defendant Audubon Ventures, LLC because "it is not required that diversity of citizenship exist between the third-party defendant and the plaintiff, or ... between defendant, as third-party plaintiff, and the third-party defendant."  <u>New Hampshire Ins. Co. v. Diller</u>, 678 F. Supp. 2d 288, 292 (D.N.J. 2009) (citing <u>Spring City Corp. v. Am. Bldgs. Co.</u>, 193 F.3d 165, 169 (3d Cir. 1999)).

II.   <u>BACKGROUND</u>

Plaintiff originally filed his complaint in this action on
January 12, 2012 in the Superior Court of New Jersey, Law
Division, Camden County.  (<u>Id.</u> ¶ 1.)  Wal-Mart subsequently
removed the action to this Court pursuant to 28 U.S.C. § 1441.
Plaintiff's complaint against Wal-Mart alleges that on January
17, 2010, while walking across the parking lot outside of the
Wal-Mart store in question[2] Plaintiff tripped and fell because of
a defect in the parking lot — a cracked curb.  (<u>See</u> Ex. B to
Def.'s Motion to File Third Party Compl., Pl.'s Am. Compl. [Doc.
No. 19-1] (hereinafter "Pl.'s Am. Compl."), ¶¶ 7-8.)  At the
time of the incident, the building and parking lot premises were
owned by Audubon Ventures, LLC and leased to Wal-Mart.  (<u>See</u> Ex.
D. to Def.'s Mot. Summ. J., Lease Agreement [Doc. No. 28-2]
(hereinafter "Lease Agreement"), 2.)  Plaintiff claims that Wal-
Mart breached a duty of care owed to him, as Wal-Mart's business
invitee, by failing to maintain the property, which constituted
carelessness or negligence on the part of Wal-Mart.  Plaintiff
alleges that due to this breach, Plaintiff suffered personal

---

[2] Wal-Mart is the owner of the Wal-Mart store in question –
Store Number 5047 – located at 130 Black Horse Pike, Audubon,
New Jersey.  (<u>See</u> Def.'s Resp. to Ct.'s Order to Show Cause
[Doc. No. 16] ¶¶ 4-6.)

injuries resulting in medical expenses, pain and humiliation, and loss of earning capacity.[3]  (Pl.'s Am. Compl. ¶ 11.)

On October 24, 2012, Wal-Mart sought leave of Court to file a third-party complaint against Audubon pursuant to Federal Rule of Civil Procedure 14(a)(1), claiming contribution and indemnification and joint and several liability from Audubon for all or part of Plaintiff's damages if Plaintiff were successful on his negligence claim against Wal-Mart.  The Honorable Karen M. Williams, United States Magistrate Judge, granted Wal-Mart's motion [Doc. No. 19] by Order [Doc. No. 21] dated November 20, 2012.  Wal-Mart subsequently filed its first third-party complaint [Doc. No. 22] against Audubon alleging that at the time of the incident, Audubon owned the parking lot premises at issue, and by the terms of the Lease Agreement, was solely responsible for all repairs, service, and maintenance of the

---

[3] On October 1, 2012, Plaintiff sought leave to amend the complaint to add Wilmington Trust of Pennsylvania as a defendant in this action.  (See Mot. to Amend [Doc. No. 14].)   By Order dated November 5, 2012, the Honorable Karen M. Williams, Unites States Magistrate Judge, granted Plaintiff's motion.  (Order [Doc. No. 20] 1, Nov. 5, 2012.)  Despite being granted leave to file the amended complaint, a review of the docket in this action indicates that Plaintiff failed to actually file the amended complaint with the Clerk of Court.  Accordingly, the operative complaint in this action is the original complaint and Wilmington Trust of Pennsylvania is not a defendant in this case.

premises.  (See Def.'s Mot. for Leave to File Third-Party Compl.
[Doc. No. 19] 4-5, Oct. 24, 2012.)

On December 28, 2012, Audubon filed a motion [Doc. No. 29]
to strike and dismiss Wal-Mart's third-party complaint [Doc. No.
22] pursuant to Federal Rule of Civil Procedure 14(a)(4) on the
basis that its late joinder in this case was caused by Wal-
Mart's undue delay, bad faith, and dilatory motives and resulted
in unfair prejudice to Audubon.  On January 4, 2013, Wal-Mart
filed an amended third-party complaint [Doc. No. 31] in which it
dropped its claim for contractual contribution and
indemnification against Audubon.  Subsequently, on January 11,
2013, Audubon filed a second motion [Doc. No. 35] to strike and
dismiss with respect to Wal-Mart's amended third-party
complaint.  Additionally, on January 22, 2103, Audubon filed a
brief [Doc. No. 39] in opposition to Wal-Mart's motion for
summary judgment.[4]

---

[4]As a threshold matter, Audubon's Brief in Opposition to
Wal-Mart's Motion for Summary Judgment is unnecessary here.
Wal-Mart seeks summary judgment on negligence claims asserted by
Plaintiff against Wal-Mart, not Audubon.  Plaintiff has not
brought any direct claims against Audubon.  Thus, opposition to
the pending motion for summary judgment, if any, should have
been filed by Plaintiff, not Audubon.
     Moreover, granting summary judgment for Wal-Mart terminates
Wal-Mart as a party to this action, thereby mooting any third-
party claims against Audubon.  Audubon admits as much in its
papers recognizing that "[t]here is no need to rule on Audubon's

## III. __DISCUSSION__

In the present motion, Wal-Mart seeks the entry of summary judgment in its favor on Plaintiff's negligence claims.  Summary judgment is appropriate where the Court is satisfied that "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (citing FED. R. CIV. P. 56).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit.  Id.  "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and

_____

motion [to strike the third-party complaint] ... if summary judgment is entered ... [because] [t]hose issues become moot." (See Br. of Third-Party Def. Audubon in Reply to Opp'n of Wal-Mart [Doc. No. 40] 5.)

7

all justifiable inferences are to be drawn in his favor.'"
Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)
(citing Anderson, 477 U.S. at 255).    Initially, the moving
party bears the burden of demonstrating the absence of a genuine
issue of material fact.  Celotex, 477 U.S. at 323 ("[A] party
seeking summary judgment always bears the initial responsibility
of informing the district court of the basis for its motion, and
identifying those portions of 'the pleadings, depositions,
answers to interrogatories, and admissions on file, together
with the affidavits, if any,' which it believes demonstrate the
absence of a genuine issue of material fact." (citation
omitted); see also Singletary v. Pa. Dept. of Corr., 266 F.3d
186, 192 n.2 (3d Cir. 2001) ("Although the initial burden is on
the summary judgment movant to show the absence of a genuine
issue of material fact, 'the burden on the moving party may be
discharged by "showing" -- that is, pointing out to the district
court -- that there is an absence of evidence to support the
nonmoving party's case' when the nonmoving party bears the
ultimate burden of proof.") (citing Celotex, 477 U.S. at 325).

    Once the moving party has met this burden, the nonmoving
party must identify, by affidavits or otherwise, specific facts
showing that there is a genuine issue for trial.  Celotex, 477

U.S. at 324.   A "party opposing summary judgment may not rest upon the mere allegations or denials of the ... pleading[s.]" Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001) (internal quotations omitted).   For "the non-moving party[] to prevail, [that party] must 'make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial.'"   Cooper v. Sniezek, 418 F. App'x 56, 58 (3d Cir. 2011) (citing Celotex, 477 U.S. at 322).   Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 256-57.

A movant, however, is not automatically entitled to summary judgment where the nonmoving party fails to respond to the motion.   Zrodskey v. Head Classification Officer, No. 11-00283 JAP, 2013 WL 275493, at *1 (D.N.J. Jan. 24, 2013).   Instead, summary judgment will be granted "only if the moving party has established that summary judgment is appropriate."   Id. (citing Anchorage Assocs. v. V.I. Bd. of Tax Rev., 922 F.2d 168, 176 (3d Cir. 1990)).   Generally, it is impermissible for a district court to provide by local rule that a motion for summary

judgment will be automatically granted when the opposing party
fails to respond.  <u>Anchorage</u>, 922 F.2d at 175.  However, a
district court's local rules may provide that the failure to
respond will be construed as the opposing party's waiver of its
opportunity to controvert the facts asserted by the moving
party.  <u>Id.</u> at 175-76.  Along these lines, in the District of
New Jersey, Local Civil Rule 56.1(a) provides in pertinent part
that "any material fact not disputed [by the opponent] shall be
deemed undisputed for purposes of the summary judgment motion."
L. Civ. R. 56.1(a).  Plaintiff has not filed an opposition to
Wal-Mart's motion for summary judgment.  Therefore, pursuant to
Local Rule 56.1(a), the Court deems all material facts set forth
in the present motion as undisputed in this instance based on
Plaintiff's failure to respond to Wal-Mart's motion for summary
judgment.

IV.  **ANALYSIS**

    In this case, Plaintiff's negligence claim against Wal-Mart
arises from an incident on January 17, 2010, in which Plaintiff
allegedly tripped and fell in the parking lot outside of the
Wal-Mart Store in question due to a defect in the parking lot,
i.e., a cracked curb.  Plaintiff asserts that Wal-Mart's conduct
in failing to maintain, supervise, light, mark, or repair the

property constituted carelessness, recklessness,[5] or negligence.

To prove his negligence claim under New Jersey law,[6] Plaintiff

must present proof of the following elements: (1) the existence

of a duty of care, (2) a breach of that duty by defendant, (3)

proximate cause, and (4) actual damages.  See Summers v. United

States, No. 09-4920, 2012 WL 4062471, at *3 (D.N.J. Sept. 14,

2012) (citing Brunson v. Affinity Fed. Credit Union, 972 A.2d

1112, 1123 (N.J. 2009)).

Wal-Mart, however, challenges the first element of

Plaintiff's negligence claim, arguing that summary judgment

should be entered in its favor because Wal-Mart did not owe

Plaintiff a duty of care with respect to maintaining the parking

lot at issue.  Moreover, Wal-Mart asserts that even if such a

duty existed, Wal-Mart did not breach that duty.  With respect

to Wal-Mart's first argument, the existence of a duty of care is

a matter of law to be determined by the court.  See Holmes v.

Kimco Realty Corp., 598 F.3d 115, 118 (3d Cir. 2010) (citing

---

[5] Plaintiff and Wal-Mart later stipulated to strike all
allegations of recklessness from the complaint.  (See
Stipulation [Doc. No. 9] ¶ 1.)

[6] The Court sitting in diversity here must apply the
substantive law of the state whose laws govern the action, in
this case, New Jersey.  See Kleinknecht v. Gettysburg College,
989 F.2d 1360, 1365 (3d Cir. 1993).

Carvalho v. Toll Bros. & Developers, 675 A.2d 209, 212 (N.J. 1996)).  If, as Wal-Mart asserts, it did not owe a duty of care to Plaintiff, then Plaintiff's negligence claim fails and Wal-Mart is entitled to judgment in its favor.

Under New Jersey law, the question of "[w]hether a person owes a duty of reasonable care toward another turns on whether the imposition of such a duty satisfies an abiding sense of basic fairness under all of the circumstances in light of considerations of public policy."  Hopkins v. Fox & Lazo Realtors, 625 A.2d 1110, 1116 (N.J. 1993) (citing Goldberg v. Hous. Auth. of City of Newark, 186 A.2d 291, 293 (N.J. 1962)). In determining if a landowner or occupier, such as Wal-Mart, owes a duty of care to persons on its property, such as Plaintiff, New Jersey courts thus consider four factors: (1) the relationship of the parties; (2) the nature of the attendant risk; (3) the opportunity and ability to exercise care; and (4) the public interest in the proposed solution.  Hopkins, 625 A.2d at 1116 (citing Goldberg, 186 A.2d at 293) (hereinafter, "Hopkins factors").  Evaluating the Hopkins factors in any case is "both very fact-specific and principled; it must lead to solutions that properly and fairly resolve the specific case and generate intelligible and sensible rules to govern future

conduct." <u>Hopkins</u>, 625 A.2d at 1116.

The duty of care owed by commercial landowners in New Jersey has expanded over the course of time. Until 1981, New Jersey courts had not previously "extended the liability of owners of abutting property, commercial or residential, to include injuries to pedestrians caused by the evident and dangerous deterioration or dilapidation of sidewalks because of neglect." <u>Stewart v. 104 Wallace Street, Inc.</u>, 432 A.2d 881, 885 (N.J. 1981). The New Jersey Supreme Court in <u>Stewart</u>, however, reversed course on the so-called "no liability" rule and thus extended a commercial landowner's duty of care. The <u>Stewart</u> court held that "commercial landowners are responsible for maintaining in reasonably good condition the sidewalks abutting their property and are liable to pedestrians injured as a result of their negligent failure to do so." <u>Stewart</u>, 432 A.2d at 887. The duty of care outlined in <u>Stewart</u> applies "even when the sidewalk is neither owned nor controlled by the landowner." <u>Holmes</u>, 598 F.3d at 119 (citing <u>Stewart</u>, 432 A.2d at 887). The New Jersey Supreme Court subsequently extended the Stewart duty to maintain sidewalks in a reasonably safe condition to include the removal of snow and ice. <u>See</u> <u>Mirza v. Filmore Corp.</u>, 456 A.2d 518, 521 (1983).

In 1986, the Appellate Division of the New Jersey Superior Court expanded the ruling in Stewart further by finding that the duty of care for adjacent sidewalks applied not only to a commercial landowner, but also "to a commercial *tenant* in *exclusive possession* of the premises abutting the sidewalk." Antenucci v. Mr. Nick's Mens Sportswear, 514 A.2d 75, 77 (N.J. Super. Ct. App. Div. 1986) (emphasis added). The court in Antenucci specifically declined, however, to "address the situation of a multiple tenanted building[,]" and whether a duty was owed by tenants in that circumstance – the issue presently before this Court. See id. at 77-78.

In 2010, the Court of Appeals for the Third Circuit faced precisely this question, and examined "whether the State of New Jersey would impose a common law duty on a tenant in a multi-tenant shopping center to maintain the parking lot owned by the landlord." Holmes, 598 F.3d at 116. "Because the question of a tenant's common law duty to maintain a multi-tenant parking lot ha[d] not [yet] been addressed by the New Jersey Supreme Court," the Third Circuit was required to "'predict how the New Jersey Supreme Court would rule if presented with this case.'" Id. at 118 (internal quotation marks and citation omitted). To answer this question, the Third

14

Circuit conducted a thorough review of the relevant New Jersey case law, analyzed the Hopkins factors, and focused extensively on the public policy considerations highlighted in Stewart and the basic fairness principle discussed in Monaco v. Hartz Mountain Corp., 840 A.2d 822, 833 (N.J. 2004) (citing Hopkins, 625 A.2d at 1116).[7] The Third Circuit recognized the expanding duty of care for commercial landowners and tenants in exclusive possession but noted that the lower courts in New Jersey had "refused to impose a duty on tenants for common areas of a multi-tenant facility." Id. at 119-20.

Ultimately, the Third Circuit predicted that if faced with the issue, the New Jersey Supreme Court "would not impose a duty on an individual tenant for snow removal from the common areas of a multi-tenant parking lot when the landlord has *retained and exercised* that responsibility." Id. at 124 (emphasis added). In reaching this determination, the Third Circuit conceded that the tenant in this circumstance derives a benefit from the parking lot and that the "imposition of a duty would incentivize [the tenant] to prevent dangerous conditions[,]" but ultimately

---

[7] Whether a duty is owed "turns on whether the imposition of such a duty satisfies an abiding sense of basic fairness under all of the circumstances in light of considerations of public policy." Hopkins, 625 A.2d at 1116.

concluded that "countervailing policy considerations weigh[ed] more heavily against imposition of a duty." Id. at 123. Specifically, the Third Circuit found that imposing a duty on tenants to maintain the parking lot, or other common area, of a multi-tenant facility "would result in substantially increased costs with little added benefit." Id. at 124.

As the Third Circuit highlighted, landowners already have sufficient economic incentives to keep the parking lots of multi-tenant shopping centers "free of snow, ice, and other hazards," because a "well-maintained parking lot induces shoppers to patronize the center and motivates tenants to pay their common area maintenance fees." Id. The Third Circuit also found that imposing a duty on tenants in a multi-tenant facility where the landlord had a maintenance program in place "would result in duplicative effort[,] ... interference with the landlord's maintenance program[,]" and would cause uncertainty and confusion regarding the extent of the duty and who — the landlord or the tenant — should exercise authority over common areas. Id. Finally, the Third Circuit noted that its holding would not leave an injured plaintiff without a remedy because the plaintiff would still maintain a cause of action against the landowner/landlord. Id. at 124.

16

Subsequent to the Third Circuit's decision in <u>Holmes</u>, two separate panels of the New Jersey Superior Court Appellate Division have issued decisions examining the scope of the duty to be imposed upon a retail store tenant located in a shopping center with several other commercial tenants.   <u>See, e.g.</u>, <u>Kandrac v. Marrazzo's Mkt. at Robbinsville</u>, 57 A.3d 11, 12 (N.J. Super. Ct. App. Div. 2012) (analyzing "whether a commercial tenant in a multi-tenant shopping center owes a duty to its patrons to maintain an area of the parking lot that the landlord is contractually obligated to maintain"); <u>Nielsen v. Wal-Mart Store No. 2171</u>, 57 A.3d 1121 (N.J. Super. Ct. App. Div. 2013). Although examining essentially the same issue, the panels in <u>Kandrac</u> and <u>Nielsen</u> reached opposite conclusions on whether to impose a duty of care.   <u>See</u> <u>Nielsen</u>, 57 A.3d at 1125 n.7 (acknowledging that the panel's holding "may seem inconsistent with the recent holding of another panel, which considered the liability of a commercial tenant where the owner agreed to repair and maintain the area where the plaintiff was injured.")

In <u>Kandrac</u>, the Appellate Division held that generally, a commercial tenant in a multi-tenant shopping center does not owe a duty to its customers to maintain an area of the parking lot that the landlord of the property is contractually obligated to

maintain.  57 A.3d at 12.  Importantly, the facts in <u>Kandrac</u> bear a striking resemblance to the facts of the present case as the plaintiff in <u>Kandrac</u> "fell in the shopping center's parking area after leaving [the] defendant's store[.]"  <u>Id.</u> at 13.  The defendant in <u>Kandrac</u>, Marrazzo's Market at Robbinsville ("Marrazzo's"), was one of thirty-six (36) stores in a shopping center known as The Shoppes at Foxmoor.  <u>Id.</u> at 12.  After leaving Marrazzo's with her husband, the plaintiff "proceeded to the crosswalk to cross the roadway to the parking area" and testified that once "she moved around a car[,] ... her 'foot caught a hump.'"  <u>Id.</u> at 13.  Then the plaintiff "tripped, fell forward onto her face and suffered injuries."  <u>Id.</u>  On the date of the plaintiff's injury, there was no rain or ice present, and the plaintiff's fall "occurred approximately two feet from the cross walk in a roadway that separate[d] the stores from the area where cars [were] parked."  <u>Id.</u>

While the trial court in <u>Krandrac</u> relied on the Third Circuit's prediction of New Jersey law from <u>Holmes</u>, the Appellate Division reviewed the trial court's finding *de novo* and independently reached the conclusion that "when a commercial tenant in a multi-tenant shopping center has no control or contractual obligation to maintain a parking lot shared with

other tenants, the common law does not impose a duty upon the tenant to do so." Id. at 18.  Accordingly, the panel in Kandrac affirmed the grant of summary judgment in favor of the tenant, Marrazzo's, finding that the store did not owe a duty to the plaintiff who tripped and fell in the parking lot.  Id. at 12. In so holding, the Appellate Division first acknowledged that New Jersey courts have expanded the common law duty of commercial landowners over the course of time, beginning with the New Jersey Supreme Court decision in Stewart, and have gone so far as to extend the scope of this duty to commercial tenants in exclusive possession of the property.  Id. at 15-16.

The Kandrac panel went on to note that the relevant question to answer was whether the policy considerations identified in Stewart, which supported an extension of the commercial landowner's duty in that case, similarly support an extension of this duty to a defendant like Marrazzo's — a commercial tenant in a multi-tenant property.  Id. at 16-17. The six policy considerations examined by the panel in Kandrac include:

> (1) a recognition of the considerable interest in and rights the commercial landowner had regarding the property in question;
> (2) whether imposing a duty associated with those rights would be arbitrary;
> (3) whether a failure to impose the duty would

```
                    leave innocent victims without recourse;
         (4)    a recognition that the imposition of liability
                would give an incentive to landowners to care
                for the property in question;
         (5)    whether the proximity of the place where the
                injury occurred to the business establishment
                would render a failure to impose a duty
                arbitrary; and
         (6)    a recognition that the commercial landowner
                would treat the costs associated with
                additional insurance premiums and maintenance
                as one of the necessary costs of doing
                business.
```

Id. at 16-17 (citations and internal quotation marks omitted).

After careful consideration of these public policy concerns, the Kandrac court found that an extension of the duty of care to commercial tenants in a multi-tenant setting was unwarranted especially because the tenant was not in the "ideal position" to take prompt action to cure defects based on the allocation of duties in the lease agreement between the tenant and the landowner. Id. at 17-18. The panel emphasized that the lease between Marrazzo's and the landowner "squarely assign[ed] the duty to maintain the area where [the] plaintiff was injured to the landlord" and "[c]onsistent with that allocation, the testimony of the witnesses showed that, while Marrazzo's employees made periodic inspections of the parking area, all repair and maintenance issues were referred to the landlord" who "retained the obligation to make such inspections, did so, and

20

performed all necessary repairs and maintenance." Id. at 17.
The Kandrac panel also found that the record did "not establish
any 'rights' that Marrazzo's had over the area where the injury
occurred that conflicted with the allocation of responsibility
in the lease[.]" Id.

However, the Nielsen panel reached a conclusion seemingly
at odds with the holdings in both Holmes and Kandrac. See
Nielsen v. Wal-Mart Store No. 2171, 57 A.3d 1121 (N.J. Super.
Ct. App. Div. 2013). In Nielsen, the plaintiff was injured
after slipping and falling on an exterior area around the
perimeter of another Walmart store. Id. at 1122-23. Although
the plaintiffs in Holmes, Kandrac, and Nielsen each asserted
negligence claims based on a slip and fall, Nielsen dealt with a
unique set of facts, distinct from those in Holmes, Kandrac, and
the present case. The defendant in Nielsen was a Walmart store
located in Princeton, New Jersey (hereinafter, "Princeton
Walmart") which was part of a multi-unit commercial condominium
complex developed by codefendant, the Nassau Shopping Center
Condominium Association. Id. at 1122. Unlike the Wal-Mart
store in this case, and the retail stores involved in Holmes
(i.e., Lowe's) and Kandrac (i.e, Marrazzo's), all of which
leased their respective buildings from the landowner/landlord,

21

the Princeton Walmart owned the unit wherein the store was located.  Id.

In the spring of 2006, the Princeton Walmart attempted to remedy a rodent problem by hiring the plaintiff's employer, Ecolab, Inc., to exterminate the pests from the store.  Id.  The plaintiff, William Nielsen, was "present at the site on behalf of" Ecolab, and the Princeton Walmart specifically "directed [the] plaintiff, in the course of setting rodent traps, to access the various store entrances from the exterior of the unit[.]"  Id.  During the course of setting these rodent traps, the plaintiff slipped and fell.  Id.  There was no dispute amongst the parties that the plaintiff's fall did not occur within the boundaries of the Princeton Walmart.  Id. at 1121 n.1.  In fact, the "exterior area around the perimeter of Walmart's unit" where the plaintiff slipped and fell, "was owned and maintained by the developer," and the master deed governing the developer's relationship with Walmart provided, in pertinent part, that the developer agreed to "'supervise, administer, operate, manage, insure, repair, replace, and maintain' the common elements, including the area in question."[8]  Id. at 1122-

---

[8] At the outset of the litigation in Nielsen, the plaintiff sued the Princeton Walmart and several fictitious defendants.  Nielsen, 57 A.3d at 1123.  "More than two years after the

23.

Accordingly, the Princeton Walmart argued on appeal that the trial court erred, in part, by failing to distinguish between the duty owed by a business owner for conditions on its premises versus off its premises.  Id. at 1123.  The panel in Nielsen also undertook an extensive review of the case law in this area beginning with Stewart decision.  Nielsen, 57 A.3d at 1123-1126.  Ultimately, though, the Nielsen panel rejected the Princeton Walmart's arguments and concluded that "[t]he relationship of the parties, the attendant risks, the nature of the risks, and simpl[e] fairness to the innocent plaintiff, warrant[ed] the imposition of a duty of care on [the Princeton] Walmart regarding hazardous conditions outside and along the perimeter of [the Princeton] Walmart's premises even though the developer may also be liable and even though the developer contractually agreed to be responsible for repair and maintenance of the area."

---

action's accrual, [the] plaintiff amended his complaint to join the developer, [codefendant Nassau Shopping Center Condominium Association] which soon thereafter successfully moved for summary judgment on statute-of-limitations grounds[.]"  Id. Thus, recovery against the developer having been barred by the statute of limitations, the plaintiff's only remaining means to recover for his injuries was a finding of liability against the Princeton Walmart.

In so holding, the Nielsen panel distinguished its findings
with those of the courts in Kandrac and Holmes on the basis that
the holdings of those cases were "unduly dependent upon the
assignment of responsibility for a common area defined by the
defendant's lease."  Id. at 1125 n.7.  According to the Nielsen
panel, "[t]he content of the lease" is merely "a factor to be
considered[.]"  Id.; see also id. at 1126 ("That [the Princeton]
Walmart had not contractually agreed to maintain or repair the
area where [the] plaintiff was injured is simply one factor to
be considered in determining whether a duty of care should be
imposed. In our view, this factor carries little weight.").

A careful reading of Holmes and Kandrac demonstrates to
this Court that neither decision was "unduly dependent" upon the
allocation of responsibility set forth in the parties' lease
agreements as suggested by Nielsen.  In fact, the Third Circuit
in Holmes explicitly rejected the tenant's "argument that it
should not be held liable because the Lease obliged the landlord
to remove snow and the contracting parties are in the best
position to allocate such risks." 598 F.3d at 122 n.5.  The
Third Circuit observed that the allocation of risk set forth in
the lease merely defined the indemnity rights between the tenant
and the landlord, but could not "conclusively determine [the

tenant's] common law tort duties to third party invitees."  Id.

Similarly, the Appellate Division in Kandrac expressly recognized that lease agreement governing "the landlord's obligation to maintain the common areas of the shopping center in good operating condition and repair [did] not relieve Marrazzo's [as a tenant] of all duties to its customers regarding ingress and egress."  57 A.2d at 17.  Rather than being "unduly dependent" on the assignment of responsibilities in the lease as the court in Nielsen asserted, the Kandrac court simply found that the allocation of responsibilities in the lease "impact[ed] the scope of Marrazzo's ability to address conditions in the parking lot" in "the context of a multi-tenant shopping center[.]"  Id. at 17.  Thus, the Kandrac panel did precisely what the court in Nielsen suggested – it merely viewed the content of the lease as one factor to consider but focused primarily on the underlying policy considerations from Stewart in deciding whether to impose a duty.

After careful consideration of the cases set forth supra, the Court finds that Wal-Mart is entitled to summary judgment on Plaintiff's negligence claim because Wal-Mart did not owe Plaintiff a duty of care to maintain and repair the parking lot in light of the facts of this particular case.  At the outset,

25

the Court notes that Wal-Mart is a tenant in a horse-shoe shaped shopping center with ten to fifteen other retails stores, and Audubon is the owner of the shopping center.  (Def.'s Mot. for Summ. J. [Doc. No. 28] 8, 11.)  Given Wal-Mart's status as a tenant in a multi-tenant shopping center, Kandrac, Nielsen, and Holmes are particularly relevant to the Court's determination of whether Wal-Mart owed a duty of care to Plaintiff in this case. However, the facts and circumstances of the present case sufficiently distinguish it from Nielsen, and make Kandrac and Holmes significantly more persuasive in resolving the present motion.

Similarly to the plaintiffs in Holmes and Kandrac, Plaintiff in the present case claims that his injury occurred while walking in the parking lot outside of the Wal-Mart store in question – a considerable distance from the store itself given that the parking lot is separated from the store by a roadway.  By comparison, the plaintiff in Nielsen was injured while walking along the exterior perimeter of the Princeton Walmart – an area immediately abutting the store itself. Furthermore, in Nielsen, the Princeton Walmart affirmatively directed the plaintiff to work in a manner which exposed him to the very danger leading to his injury.  57 A.3d at 1127.  There,

26

the Princeton Walmart specifically directed the plaintiff to walk around the exterior perimeter immediately abutting the store in order to reach various store entrances to set rodent traps.  Id.

The Appellate Division in Nielsen thus recognized that the Princeton Walmart had the opportunity, but failed, to exercise care in order to avoid the plaintiff's injury.  The Princeton Walmart could have allowed the plaintiff to access the entrances through the interior of the store, but — presumably in order to avoid upsetting customers — purposefully directed the plaintiff to walk around the exterior perimeter where the dangerous condition existed.  57 A.3d at 1127.  The Nielsen court found that the "nature of the attendant risk" and "the opportunity and ability to exercise care" factors favored imposition of a duty where the plaintiff was "utilizing the common area for [the Princeton Walmart's] benefit precisely as directed by [the Princeton Walmart]."  Id.  Additionally, even though the Princeton Walmart was not contractually obligated to maintain the exterior of the building where the plaintiff was injured, the Nielsen court concluded that the Princeton Walmart, unlike the developer, "had every opportunity to recognize and exercise care with regard to the attendant risk."  Id.  Given the

27

immediate proximity of the location where the injury occurred to the Princeton Walmart, the Princeton Walmart's express instruction to the plaintiff regarding the particular path to utilize in performing his work, and because the plaintiff was brought onto the premises to for the benefit of the defendant (i.e., remedying the rodent problem at the store), the court in Nielsen determined that the imposition of a duty of care on the Princeton Walmart satisfied an abiding sense of basic fairness under all the circumstances.  Id.

In case now before the Court, none of these unique circumstances are present and an abiding sense of basic fairness in light of the relevant policy considerations counsels against imposing a duty on Wal-Mart.  Plaintiff here was freely traversing the parking lot located across the roadway from Wal-Mart's store without any instruction from Wal-Mart as to which path he should employ.  Wal-Mart, like the Lowe's store in Holmes, and Marrazzo's in Kandrac, leased the building where the store in question is located from a commercial landowner/landlord, whereas, the Princeton Walmart in Nielsen was the owner of the building where the store was located.  Also as in Kandrac and Holmes, Plaintiff's injury occurred in the parking lot which was owned by the landlord, Audubon, and leased

28

to Wal-Mart.

Moreover, under the express terms of Lease Agreement between Wal-Mart and Audubon, Audubon as the lessor agreed to maintain the common areas of the shopping center, including the parking lot in question.  Specifically, paragraph 9 of the Lease Agreement between Wal-Mart and Audubon states that the "[l]essor shall maintain the Common Areas" of the premises which explicitly includes "vehicle parking [areas] ..., any common roadways ..., gutters, curbs, service areas, driveways, areas of ingress and egress ..., sidewalks and other pedestrian ways" as set forth in paragraph 30 of the Lease Agreement.  (See Third Party's Am. Compl. [Doc. No. 31-2] ¶¶ 9(C), 30.)

Audubon's responsibilities for the common areas required Audubon to remove all papers, snow, ice, debris, filth and refuse by thoroughly sweeping the area and to maintain all surfaces in a level, smooth and evenly covered condition.  (Id. ¶ 9(C).)  While Wal-Mart is obligated under the Lease Agreement to maintain the premises by repairing or replacing the HVAC system, the roof, or other structural components of the building, the Lease Agreement clearly and unambiguously provides that "the Common Areas within the Demised Premises" are excluded from Wal-Mart's maintenance responsibilities.  (Id. ¶ 10.)

According to the terms of the Lease Agreement then, Audubon was not only responsible for, but in fact retained exclusive rights to maintain the Common Areas including the parking lot.[9]

The Court is cognizant that the allocation of duties set forth in the Lease Agreement is just one factor to be considered here and that it alone cannot conclusively determine Wal-Mart's common law tort duties to third part invitees.  See Nielsen, 57 A.3d at 1125 n.7, 1127; Holmes, 598 F.3d at 122 n.5.  In this case though, the Court is also persuaded that the imposition of a duty on Wal-Mart is not necessary or appropriate given that Audubon actively exercised its right to control and maintain the Common Areas within the shopping center by employing Bramble Sweeping, Inc. for that express purpose.  (See Def.'s Mot. for Summ. J. 14.)  As in Kandrac, Wal-Mart was left with virtually no meaningful opportunity and ability to exercise care over the parking lot based on Audubon's actions in this regard. Moreover, there is nothing that distinguishes this case in a

---

[9] Although paragraph 9(F) of the Lease Agreement provides that Wal-Mart "shall have the right to maintain the Common Area[s] ... within its Demised Premises[,]" that provision requires Wal-Mart to affirmatively provide written notice to Audubon in order to exercise this right.  (Id. ¶ 9(F).)  There is no evidence in the record to demonstrate that Wal-Mart ever directed the required written notice to Audubon in order to overtake maintenance duties for the Common Areas.

meaningful way from the Third Circuit's decision in <u>Holmes</u>, a case that notes that the relevant policy considerations weigh heavily against the imposition of a duty because obligating tenants in a multi-tenant shopping center "to maintain common areas would result in substantially increased costs with little added benefit."  598 F.3d at 123-24.

Accordingly, given the circumstances of this case, the Court concludes that Wal-Mart, as a commercial tenant in a multi-tenant shopping center, owed no duty of care to Plaintiff with respect to maintenance of the parking lot.  Wal-Mart has demonstrated that no genuine issue of material fact exists, and that it is thus entitled to judgment as a matter of law on Plaintiff's negligence claim.[10]  Having determined that Wal-Mart does not owe a duty to Plaintiff, the Court need not address the remaining elements required in a negligence cause of action. Furthermore, as Wal-Mart has now been relieved of any potential liability to Plaintiff, its third-party complaints brought against Audubon are moot, as are Audubon's motions to strike the same.

---

[10] To the extent this Opinion indicates that Audubon, as the landowner, owed a duty of care to Plaintiff, this Opinion should not be construed in any manner to suggest the continuing viability of any direct claim by Plaintiff against Audubon.

V.    **CONCLUSION**

For the foregoing reasons, Defendant Wal-Mart's motion for summary judgment is granted, and Third-Party Defendant Audubon's motions to strike Wal-Mart's third-party complaints are denied as moot.   An Order consistent with this Opinion will be entered.


Dated: September 13, 2013          s/ Noel L. Hillman
At Camden, New Jersey           NOEL L. HILLMAN, U.S.D.J.

32